ROTHENBERG, J.
Melania and Charlie Cheetham (collectively, “the Cheethams”) appeal from a final judgment entered in favor of their insurer, Southern Oak Insurance Company (“Southern Oak”), based on the trial court’s finding that the Cheethams’ claimed loss was specifically excluded under their policy. As we conclude the claimed loss does not fall within the exclusion, we reverse the final judgment and remand for further proceedings.

7.FACTS

The Cheethams filed a claim with their insurer, Southern Oak, after their home sustained water damage. After Southern *259 Oak denied the claim, the Cheethams filed suit, claiming the loss was covered by their all-risk homeowners’ insurance policy. In response, Southern Oak asserted that the “Water Damage” exclusion, specifically section A.3.b., was applicable, and, therefore, the Cheethams’ loss was not covered. The relevant provisions of the policy, including the water damage exclusion, provide as follows:
HOMEOWNERS 3 — SPECIAL FORM
[[Image here]]
SECTION I — PERILS INSURED AGAINST
A. Coverage A — Dwelling And Coverage B — Other Structures
1. We insure against risk of direct physical loss to property described in Coverages A and B.
2. We do not insure, however, for loss:
a. Excluded under Section I — Exclusions;
[[Image here]]
c. Caused by:
[[Image here]]
(6) Any of the following:
(a) Wear and tear, marring, deterioration;
[[Image here]]
Exception To c.(6)
Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:
(i) Storm drain, or water, steam or sewer pipe, off the “residence premises”; or
(ii) Plumbing ... system[1] ... on the “residence premises ”.[2] This includes the cost to tear out and replace any part of a building, or other structure, on the “residence premises”, but only when necessary to repair the system.... However, such tear out and replacement coverage only applies to other structures if the water ... causes actual damage to a building on the “residence premises”.
We do not cover loss to the system ... from which this water ... escaped.
*260 For purposes of this provision, a plumbing system ... does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout [sic] or similar fixtures or equipment.
Section I — Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above.
[[Image here]]
B. Coverage C — Personal Property
We insure for direct physical loss to the property described in Coverage C caused by any of the following penis unless the loss is excluded in Section I — Exclusions.
[[Image here]]
12. Accidental Discharge Or Overflow Of Water Or Steam
a. This peril means accidental discharge or overflow of water ... from within a plumbing ... system ....
b. This peril does not include loss:
(1) To the system ... from which the water ... escaped;
[[Image here]]
(3) On the “residence premises” caused by accidental discharge or overflow which occurs off the “residence premises”; ....
[[Image here]]
c. In this peril, a plumbing system ... does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.
d. Section I — Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.
[[Image here]]
SECTION I — EXCLUSIONS
A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
[[Image here]]
3. Water Damage
Water Damage means:
a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or
c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;
caused by or resulting from human or animal forces or any act of nature,
(emphasis indicated by underscoring).
The Cheethams’ claim was tried. At trial, it was undisputed that due to age and deterioration, a pipe located on the “residence premises” broke and/or collapsed. As the pipe was located underneath the ground, debris entered the pipe, forming a blockage, which ultimately caused waste water and/or material to back up through the blocked pipe and into the “residence premises” through drains. At the close of *261 the evidence, based on the undisputed facts, Southern Oak renewed its motion for a directed verdict, arguing that the relevant policy provisions were unambiguous and that the Cheethams’ claimed loss was excluded under the policy. The trial court granted Southern Oak’s motion for a directed verdict, finding that the relevant policy provisions were unambiguous and that the Cheethams’ loss was excluded by section A.3.b. The trial court entered final judgment in favor of Southern Oak, and the Cheethams’ appeal followed.

II. ISSUES

The issues before this Court are (1) whether the all-risk policy is ambiguous where it provides for coverage for the “accidental discharge” of water “within a ... plumbing ... system ... on the ‘residence premises’” caused by “deterioration,” but excludes “water damage” caused by “[wjater or water-borne material which backs up through sewers or drains,” and (2) whether the exclusion applies when a pipe located within the plumbing system of the “residence premises” breaks due to deterioration, causing debris to enter the pipé and forming a blockage, and as a result of the blockage, waste water and/or material backed up through the blocked pipe “within” the “plumbing system” and then into the “residence premises” through drains.

III. ANALYSIS

We review de novo the trial court’s granting of Southern Oak’s motion for a directed verdict based on its finding that the policy excluded coverage for the claimed loss. See Diaz v. Impex of Doral, Inc., 7 So.3d 591, 593 (Fla. 3d DCA 2009) (“The standard of review of a trial court’s ruling on a motion for directed verdict is de novo.”); see also Fayad v. Clarendon Nat’l Ins. Co., 899 So.2d 1082, 1085 (Fla. 2005) (holding that whether specific damage “comes within the scope of the exclusionary clause is a question of law”); State Farm Mut. Auto. Ins. Co. v. Parrish, 873 So.2d 547, 549 (Fla. 5th DCA 2004) (“When the interpretation of an insurance contract is in question, the applicable standard of review is de novo.”); Liberty Mut. Ins. Co. v. Weiss, 790 So.2d 475, 476 (Fla. 3d DCA 2001) (holding that when the cause of loss is undisputed, whether the loss is covered by the insurance policy is a question of law).
In determining whether the Cheethams’ all-risk insurance policy excludes coverage for their claimed loss, we are guided by the following principles of insurance contract interpretation:
We begin with the guiding principle that insurance contracts are construed in accordance with “the plain language of the policfy] as bargained for by the parties.” Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 33 (Fla.2000) (quoting Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993)) (alteration in original). However, if the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage, the policy is considered ambiguous. See Anderson, 756 So.2d at 34; Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003). Ambiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured. See Anderson, 756 So.2d at 34; State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998); Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla.1998). Further, ambiguous “exclusionary clauses are construed even more strictly against the insurer than coverage clauses.” *262 Anderson, 756 So.2d at 34; see also Demshar v. AAACon Auto Transport, Inc., 337 So.2d 963, 965 (Fla.1976) (“Exclusionary clauses in liability insurance policies are always strictly construed.”). Thus, the insurer is held responsible for clearly setting forth what damages are excluded from coverage under the terms of the policy.
Fayad, 899 So.2d at 1086. Based on these principles, we must examine the all-risk policy, as a whole, to determine if it is ambiguous. However, we note that an insurance policy is not ambiguous “simply because it is complex or requires analysis,” Garcia v. Fed. Ins. Co., 969 So.2d 288, 291 (Fla.2007), or because relevant words used within the policy are not defined by the policy. Old Dominion Ins. Co. v. Elysee, Inc., 601 So.2d 1243, 1246 (Fla. 1st DCA 1992).
The portion of the Cheethams’ all-risk policy titled, “Section I — Perils Insured Against,” provides, in relevant part, that Southern Oak “insure[s] against risk of direct physical loss” to the dwelling or other structures, but does not insure for any loss “[ejxcluded by Section I — Exclusions ” or caused by “deterioration.” (emphasis added). Thus, at first glance, without examining the “Section I — Exclusions,” it would appear that the claimed loss would not be covered because the loss was caused by a deteriorated pipe. However, the policy includes an exception to the no-coverage provision involving “deterioration,” which provides, in pertinent part, as follows:
Exception To c.(6)
Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A [Dwelling] or B [Other Structures] resulting from an accidental discharge or overflow of water ... from within a:
[[Image here]]
(ii) Plumbing ... system ... on the “residence premises ” ....
(emphasis indicated by underscoring). Therefore, based on paragraph (ii) under “Exception To c.(6),” an “accidental discharge” of water from within a plumbing system caused by deterioration is a covered loss, “[u]nless the loss is otherwise excluded.” Exclusions pertaining to water damage are found in Section I A.3. of the policy.
SECTION I — EXCLUSIONS
A. We do not insure for loss caused directly or indirectly by any of the following....
[[Image here]]
3. Water Damage
Water Damage means:
a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or
c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;
caused by or resulting from human or animal forces or any act of nature.
(emphasis indicated by underscoring).
Paragraphs a. and c. of the water damage exclusion reflect that there will be no coverage for water damage to the residence premises, which were caused by outside forces unrelated to the residence premises’ plumbing system. For example, paragraph a. excludes coverage for water *263 damage caused by “[fjlood, surface water, waves, tidal water, or the overflow of a body of water,” and paragraph b. excludes coverage for water damage caused by “water or water-borne material below the surface of the ground.” Likewise, the water damage excluded in paragraph c. pertains to damage caused by water not originating from the residence premises’ plumbing system even though the water or waterborne material eventually backs up through a pipe and/or drain within the plumbing system of the residence premises. See Phelps, 294 So.2d at 363 (“When we consider the terminology used in the exclusion clause in pari materia with the affirmative statement of coverage from leaks in the plumbing system, we conclude that the exclusion was intended to relate only to damage from water not emanating from the plumbing system.”).
Based on our de novo review of the relevant policy provisions, we conclude that the exclusions from coverage contemplated by paragraphs a., b., and c. of the water damage exclusion relate to damage caused by water originating from somewhere other than the residence premises’ plumbing system. Because the claimed loss in this case was caused by the deterioration of a pipe within the plumbing system, which caused water or water-borne material emanating from the residence premises’ plumbing system to back up into the residence premises, we find the Cheet-hams’ loss is a covered loss under the policy.
Our interpretation of these provisions is consistent with the First District Court of Appeal’s interpretation of a virtually identical water damage exclusion in the policy reviewed in Old Dominion. In Old Dominion, the insured premises, a store within a mall, sustained water damage when a blockage in the main drain pipe that services the entire mall caused water to back up into the store. The blockage occurred in the main drain pipe that led to the treatment plant, and which was located off the insured premises.
The First District Court of Appeal noted that while “sewer” and “drain” were not defined in the policy issued by Old Dominion, “the mere failure to provide a definition for a term does not render the term ambiguous.” Old Dominion, 601 So.2d at 1245. The First District concluded that “[t]he common understanding of the words ‘sewer’ and ‘drain’ is that they describe devices which carry water and sewage away from property. It is also understood that a plumbing blockage which contains waste from another premises must be a backup from a ‘sewer’ or ‘drain.’ ”[3] Id. After reviewing several out-of-state cases, the court found that “the general understanding in the case law is that a sewer or drain begins at the ... property line.” Thus, the First District concluded that the damages to the store were not covered by the insurance policy, and, therefore, reversed the summary judgment entered in favor of the insured store, and remanded for entry of summary judgment in favor of Old Dominion. Id. at 1245-46; see also Hallsted v. Blue Mountain Convalescent Ctr., Inc., 23 Wash.App. 349, 595 P.2d 574, 575 (1979) (“When the ADDITIONAL EXCLUSIONS clause and Paragraph 15 are read together, it is apparent they are not contradictory. If the cause of the discharge is in the plaintiffs system, E. g., A clogged sink drain which causes water in the plumbing system to overflow, the AD *264 DITIONAL EXCLUSIONS clause does not apply. If the cause of the discharge is outside that system, E. g., a clogged sewer pipe which forces water from outside plaintiffs system to overflow, then the cause is applicable even though the water flowed through plaintiffs plumbing system.”).

IV. CONCLUSION

As we conclude that the relevant policy provisions are not ambiguous, and that section A.3.b. of the water damage exclusion is not applicable, we reverse the final judgment entered in favor Southern Oak and remand for further proceedings.
Reversed and remanded.

. The Cheethams' policy does not define “plumbing system.” However, dictionary definitions of the term indicate that a "plumbing system” includes any device that is necessary to bring water into a building and any device necessary to remove water and/or sewage away from the building. See http://www. dictionaryofconstruction.com/definition/ plumbing-system.html (defining "plumbing system” as "[ajrrangements of pipes, fixtures, fittings, valves, and traps, in a building which supply water and remove liquid-borne wastes”); http://www.webster-dictionary.org/ definition/plumbing%2 Osystem (defining "plumbing system" as "utility consisting of the pipes and fixtures for the distribution of water ... in a building and for the disposal of sewage”). Therefore, as the pipe that broke is designed to carry waste water and/or material away from the Cheethams’ house and is located on the insured premises, the pipe is a part of the "plumbing system.” See also Hartford Accident & Indent. Co. v. Phelps, 294 So.2d 362, 363 (Fla. 1st DCA 1974) ("[I]t is our view that the pipe which developed the leak was within and a part of the plumbing system of the house although it was buried in the ground below the house.”).

. The policy defines "residence premises” as:
a. The one family dwelling where you reside;
b. The two, three or four family dwelling where you reside in at least one of the family units; or
c. That part of any other building where you reside;
and which is shown as the "residence premises” in the Declarations.
"Residence premises” also includes other structures and grounds at that location.

. Citing to Webster's New World Dictionary, Third College Edition (1988), the court noted that the definition of "sewer” is "a pipe or drain usually underground, used to carry off water and waste matter,” and the definition of "drain” is a "channel or pipe for carrying off water, sewage, etc.” Old Dominion, 601 So.2d at 1245.