[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11907
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-21704-MGC

KEN CAMERON,
MICHELLE CAMERON,

Plaintiffs-Appellants,

versus

SCOTTSDALE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 16, 2018)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Appellants Ken and Michelle Cameron (the "Camerons") own a residential rental dwelling in Miami Beach, Florida. On January 2, 2016, a pipe in the plumbing system of the dwelling collapsed, causing water damage to interior surfaces and necessitating additional damage to access and repair the affected plumbing. The cause of the plumbing problem was an age-related "acute pipe failure" of one of the building's sanitary lines, which carried wastewater out of the building. The pipe failure was discovered when a tenant reported an overflow of water from a kitchen-sink drain. After the incident, the Camerons reported the loss to their commercial property insurer, Scottsdale Insurance Company, which investigated and then denied the claim. Thereafter, the Camerons filed this lawsuit challenging the denial of coverage.

The Camerons' policy covered some but not all water damage. So the issue is whether the claimed loss was the type of water damage covered by the policy. It was, according to the Camerons, because the policy covers the "[a]ccidental discharge or leakage of water . . . as the direct result of the breaking apart or cracking of a plumbing . . . system . . . that is located on the described premises." Scottsdale disagrees, asserting that the loss was excluded under the policy's Water Exclusion Endorsement ("Water Exclusion"), which excludes coverage for damages caused by "[w]ater that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment."

2

The district court, reasoning that there was a backup and overflow from a drain, found that the plain terms of the Water Exclusion applied and that the policy language cited by the Camerons did not limit the applicable language of the Water Exclusion.  So the court granted Scottsdale summary judgment, and the Camerons appealed.   Because we find that the district court's decision is contrary to controlling Florida precedent, specifically the Third District Court of Appeal's decision in *Cheetham v. Southern Oak Ins. Co.*, 114 So. 3d 257 (Fla. Dist. Ct. App. 2013), we vacate and remand.

## I.

We review *de novo* the district court's grant of summary judgment, applying the same standards as the district court.  *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1163 (11th Cir. 2017).  We also review *de novo* the district court's interpretation of contract language.  *Id.* at 1164.

In this diversity action, we apply the substantive law of the forum state, which is Florida.  *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir. 2010).  "Our objective is to determine the issues of state law as we believe the Florida Supreme Court would."  *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004).  We are, therefore, bound by decisions of the Florida Supreme Court, as well as decisions from Florida's

3

intermediate appellate courts absent some persuasive indication that the Florida Supreme Court would decide the issue differently. *Id.*

"In Florida, the terms used in an insurance contract are given their ordinary meaning, and the policy must be construed as a whole to give every provision its full meaning and operative effect." *Southern-Owners Ins.,* 872 F.3d at 1164 (internal quotation marks omitted). Unambiguous policy provisions are enforced according to their terms. *Id.* "If policy language is susceptible to multiple, reasonable interpretations, however, the policy is considered ambiguous and must be interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Id.* (internal quotation marks omitted). But "[t]he mere fact that an insurance provision is 'complex' or 'requires analysis' does not make it ambiguous." *Id.*

## II.

The Camerons' policy broadly covers "direct physical loss of or damage to" the property that is not otherwise excluded. ECF No. 14-4 at 3. Ordinarily, damages arising from "[w]ear and tear" or "[r]ust or other corrosion, decay, [or] deterioration" are excluded, but this exclusion contains an exception for damages resulting from a "specified cause of loss," which includes "water damage."[1] *Id.* at

---

[1] When "water damage" is covered, the policy extends to cover "the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes."

40, 47.  The policy defines "water damage" as the "[a]ccidental discharge or leakage of water . . . as the direct result of the breaking apart or cracking of a plumbing . . . system . . . that is located on the described premises and contains water."  *Id.* at 47.  Thus, the policy covers an "[a]ccidental discharge or leakage of water" caused by "the breaking apart or cracking" of the premises' "plumbing . . . system" due to "deterioration."  We refer to these policy provisions collectively as the "coverage provision."

However, "water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion."  *Id.* at 47.  The Water Exclusion specifically excludes coverage for damages resulting from the following:

1. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

2. Mudslide or mudflow;

3. Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

4. Water under the ground surface pressing on, or flowing or seeping through:  a. Foundations, walls, floors, or paved surfaces; b. Basements, whether paved or not; or c. Doors, window or other openings; or

5. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph 1., 3. or 4., or material carried or otherwise moved by mudslide or mudflow.

5

*Id.* at 48.   According to Scottsdale, the claimed loss falls within Paragraph 3: "Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment."

The plain terms of the coverage provision apply to the claimed loss.  The Camerons' premises suffered damage from the "[a]ccidental discharge or leakage of water" as a direct result of "the breaking apart or cracking" of the premises' "plumbing . . . system" due to age-related "deterioration."[2]  So the Camerons' loss falls within the definition of "water damage" unless it is "otherwise excluded under the terms of the Water Exclusion."  We therefore must decide whether the Water Exclusion applies to exclude coverage for the claimed loss because the pipe collapse caused water to backup through a drain in the plumbing system and into the premises.

Our resolution of this issue is fairly straightforward.  The Florida appellate court in *Cheetham* addressed a nearly identical situation and found that a water-damage exclusion, which is indistinguishable from the Water Exclusion here, did not apply.  *See* 114 So. 3d at 262–63.  Because we find no material differences between the facts of this case and *Cheetham*, we follow *Cheetham*.

**A.**

_____

[2] Scottsdale does not directly raise the issue, but we note that the sanitary line that collapsed appears to be a part of the premises's "plumbing system."  *See Cheetham*, 114 So. 3d at 259 n.1 (noting that a pipe that "is designed to carry waste water and/or material away from [the premises] and is located on the insured premises" is "a part of the 'plumbing system'").

6

In *Cheetham*, a pipe located within the insured premises's plumbing system broke due to age and deterioration, resulting in a blockage which caused wastewater to back up through the blocked pipe and into the premises through the drains.    114 So. 3d at 260.    The insureds' policy covered "the 'accidental discharge' of water 'within a . . . plumbing . . . system . . . on the 'residence premises' caused by 'deterioration.'"    *Id.* at 261.    But it also contained a water-damage exclusion, which excluded coverage for damages caused by "[w]ater or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment."    *Id.* at 262.    Like Scottsdale here, the insurer in *Cheetham* argued that the water-damage exclusion applied to the loss, and it prevailed on that issue before the trial court.

> On appeal, the Florida appellate court in *Cheetham* framed the issue as
>
> whether the exclusion applies when a pipe located within the plumbing system of the "residence premises" breaks due to deterioration, causing debris to enter the pipe and forming a blockage, and as a result of the blockage, waste water and/or material backed up through the blocked pipe "within" the "plumbing system" and then into the "residence premises" through drains.

*Id.* at 261 (emphasis omitted).    Stating that the "accidental discharge" of water from the plumbing system caused by deterioration was a covered loss, "unless the loss [was] otherwise excluded," the court turned to evaluate the water damage exclusion.    *Id.* at 262.    That provision excluded coverage for damages resulting from the following:

7

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure[.]

*Id.*

The Florida appellate court found that both "[p]aragraphs a. and c. of the water damage exclusion reflect that there will be no coverage for water damage to the residence premises, which were caused by *outside* forces unrelated to the residence premises' plumbing system." *Id.*  In light of that finding, and construing all three provisions together, the court likewise concluded that paragraph b. "pertain[ed] to damage caused by water *not* originating from the residence premises' plumbing system even though the water or water-borne material eventually backs up through a pipe and/or drain within the plumbing system of the residence premises." *See id.* at 262–63 (emphasis in original).[3]

Thus, according to *Cheetham*, the water-damage exclusion in that case applied only "to damage caused by water originating from somewhere other than

---

[3] In its analysis on page 263, the Florida appellate court appears to have referred to paragraph b. as "paragraph c.," and vice-versa.  In context, however, it's clear what paragraphs the court is referring to.  *See Cheetham*, 114 So. 3d at 262–63.

8

the residence premises' plumbing system." *Id.* at 263. And because the claimed loss was caused "by the deterioration of a pipe within the plumbing system, which caused water or water-borne material emanating from the residence premises' plumbing system to back up into the residence premises," the court concluded that the loss was unambiguously covered under the policy. *Id.* at 263–64.

**B.**

Despite its apparent similarities to this case, the district court distinguished *Cheetham* on the ground that this case does not involve, as *Cheetham* did, "another policy provision [that] specifically covered the overflow of water from the property's internal plumbing system." ECF No. 27 at 3. Scottsdale likewise asserts that the Camerons' policy did not "specifically contain[] language which provided coverage for leakage or failures of the internal plumbing system." Appellee's Br. at 21. But it is difficult to reconcile those statements with the plain terms of the Camerons' policy. The policy specifically covered an "[a]ccidental discharge or leakage of water" resulting from "the breaking apart or cracking" of the premises' "plumbing . . . system" due to "deterioration." Besides a few minor and inconsequential variations in language, that coverage provision is virtually identical to the coverage provision in *Cheetham*. *Compare* ECF. No. 14-4 at 40, 47, *with Cheetham*, 114 So. 3d at 259, 261.

9

Nor is there any material difference between the water damage exclusion in *Cheetham* and the Water Exclusion here.  Apart from the Water Exclusion's addition of "[m]udslide or mudflow," the two exclusionary provisions, set out above, are substantially the same.  Paragraphs 1, 2, and 4 of the Water Exclusion, like paragraphs a. and c. of the water damage exclusion in *Cheetham*, relate to water damage "caused by outside forces unrelated to the residence premises' plumbing system," such as weather-induced flooding.[4]  *Cheetham*, 114 So. 3d at 262.  Reading the provisions of the Water Exclusion together, therefore, we conclude that Paragraph 3 of the Water Exclusion, like paragraph b. of the water-damage exclusion in *Cheetham*, "pertains to damage caused by water not originating from the residence premises' plumbing system even though the water or water-borne material eventually backs up through a pipe and/or drain within the plumbing system of the residence premises."  *See id.* at 262–63.

That interpretation, moreover, is reinforced by other language in the policy. The policy's definition of "water damage" provides the following guidance to help determine when the Water Exclusion applies:

> [F]or example, there is no coverage under this policy in the situation in which discharge or leakage results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking.  As another example, and also in accordance with the terms

---

[4] Paragraph 5 of the Water Exclusion does not operate independently, but rather depends on the application of one of Paragraphs 1–4.

of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

These examples reflect the key distinction made by *Cheetham* and adopted here, which is that the Water Exclusion relates to water damage caused in part by outside forces, such as weather-induced flooding, but not to damage caused by a failure of the premises's plumbing system due to age or deterioration.

For the foregoing reasons, we conclude that *Cheetham* is directly on point. And we see no indication that the Florida Supreme Court would decide the issue differently from the court in *Cheetham*, as that decision is consistent with prior decisions from the Florida appellate courts, including *Old Dominion Insurance Co. v. Elysee, Inc.*, 601 So. 2d 1243 (Fla. Dist. Ct. App. 1992), and *Hartford Accident & Indemnity Co. v. Phelps*, 294 So. 2d 362 (Fla. Dist. Ct. App. 1974). *See Steinberg*, 393 F.3d at 1231 ("Our objective is to determine the issues of state law as we believe the Florida Supreme Court would.").

Consequently, in light of *Cheetham*, the district court erred in granting summary judgment to Scottsdale on the basis of the Water Exclusion. Under the coverage provision, the Camerons' claimed loss was covered as "water damage" unless it was "otherwise excluded under the terms of the Water Exclusion." *Cf. Cheetham*, 114 So. 3d at 262 (explaining that the policy covered the accidental discharge of water from the plumbing system caused by deterioration "[u]nless the

loss [was] otherwise excluded"). Although the district court found that it was, that decision is inconsistent with *Cheetham*, which interpreted materially similar exclusionary policy language and concluded that it applied only "to damage caused by water originating from somewhere other than the residence premises' plumbing system." *Id.* at 263. Because the claimed loss in this case was caused not by water originating from somewhere other than the premises's plumbing system but rather by the age-related deterioration of the plumbing system, the Water Exclusion does not apply.

While *Cheetham* suggests that the Camerons' claimed loss is unambiguously covered under their policy, *see id.* at 264 (finding no ambiguity), we recognize that the Camerons did not move for summary judgment and that the district court did not reach all of the grounds on which Scottsdale moved for summary judgment. Accordingly, we vacate the grant of summary judgment in favor of Scottsdale and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED.**