[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-10411

Non-Argument Calendar

_____

LOUIS C. HASKINS, II,

Plaintiff-Appellant,

*versus*

USAA CASUALTY INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:21-cv-01126-MCR-ZCB

_____

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Louis Haskins II appeals the district court's grant of summary judgment in favor of USAA Casualty Insurance Company in this dispute about insurance coverage for injuries he suffered in September 2017 involving a tractor owned by Gary Buchanan. After careful review of the record and the parties' briefs, we affirm.

## I.

On September 30, 2017, Haskins went to watch Buchanan, his longtime friend, bale hay at Buchanan's rural property in Jay, Florida. When Haskins arrived, Buchanan was finishing changing the fuel filter on his 1970s John Deere tractor, which was hitched to the hay baler. After Buchanan restarted the tractor, it unexpectedly "took off," running over and injuring Buchanan and Haskins, who were standing nearby.

Buchanan did not have insurance on the tractor, or a homeowner's insurance policy, so Haskins made a claim for benefits under his own car insurance policy's uninsured motorist ("UM") coverage. The gist of his position was that coverage existed under the policy for injuries sustained due to a "vehicle used in the business of farming or ranching," and that the tractor was such a vehicle. The insurer, USAA, denied the claim, and Haskins sued in state court for a declaration of coverage, which USAA removed to federal district court.

The parties filed cross-motions for summary judgment. Among other arguments, USAA maintained that the phrase "vehicle used in the business of farming or ranching" referred to the use of the tractor in question. Haskins responded that the language can reasonably be read to describe a type of vehicle, rather than a type of activity, and that the activities for which he used the tractor qualified as a farming business, in any case.

As to the tractor's use, Buchanan testified that he used the tractor to bale hay to feed the horses and cows he kept on his 150-acre property. He did not use the tractor for any other purpose, and he "wouldn't have a tractor" "if [his] wife didn't have horses." There is no evidence as to whether Buchanan ever sold the cattle or horses or any offspring or farm products. Rather, Buchanan is a dental technician who runs a dental lab adjacent to his home on the property. He keeps around six cows to maintain an agricultural tax exemption for part of the property.

The district court granted summary judgment to USAA. The court reasoned that, under the policy, coverage was governed by the use to which the vehicle was put at the time of the accident, not by potential uses that "have no relevance to the accident in dispute." So even though tractors "can be used in the business of farming," the court stated, the undisputed evidence reflected that Buchanan was baling hay for personal use, not as "part of an overall farming *business*." Haskins appeals.

## II.

We review *de novo* a district court's order granting summary judgment, construing the evidence and drawing all reasonable inferences in favor of the nonmovant—here, Haskins. *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1301–02 (11th Cir. 2022); *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "To defeat summary judgment, a mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) (quotation marks omitted). We review *de novo* the district court's interpretation of contract language. *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017).

## III.

There is no dispute that this case is governed by Florida law. Florida courts "construe insurance contracts according to their plain language." *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017). In doing so, "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013) (quotation marks omitted). We may not "rewrite contracts, add meaning that is not present or otherwise reach results contrary to the intentions of the parties." *Saha v. Aetna Cas. & Sure. Co.*, 427 So. 2d 316, 317 (Fla. 5th DCA 1983). "If the policy's language is unambiguous, it governs—end of story."

*Shiloh Christian Ctr. v. Aspen Specialty Ins. Co.*, 65 F.4th 623, 627 (11th Cir. 2023).  But if the language is genuinely ambiguous—"if it is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage"—it "must be liberally construed in favor of coverage and strictly against the insurer." *Macedo*, 228 So. 3d at 1113 (quotation marks omitted).

Two sections of Haskins's USAA policy are relevant here. Under "Part A – Liability Coverage," USAA agreed to "pay compensatory damages for [bodily injury] or [property damage] for which any covered person becomes legally liable because of an auto accident."  The policy provides various "Exclusions" to this coverage, including the following:

> B. We do not provide Liability Coverage for the ownership, maintenance, or use of:
>
> 1. Any vehicle that is not your covered auto unless that vehicle is:
>
>    a. A four- or six-wheel land motor vehicle designed for use on public roads;
>
>    b. A moving van for personal use;
>
>    c. A miscellaneous vehicle [defined as "a motor home; golf cart; snowmobile; all-terrain vehicle; or dune buggy"]
>
>    d. A vehicle used in the business of farming or ranching.

To condense this somewhat, the liability coverage excludes the "ownership, maintenance, or use of . . . [a]ny vehicle that is not your covered auto unless that vehicle is . . . used in the business of farming or ranching."

Under "Part C – Uninsured Motorists Coverage," USAA agreed to pay damages where a covered person is injured due to an auto accident involving an "uninsured motor vehicle." The term "uninsured motor vehicle" expressly "does not include any vehicle or equipment" that is "[d]esigned mainly for use off public roads while not on public roads."

Haskins agrees that UM coverage under Part C ordinarily would not apply because the tractor was not on a public road or designed for such use. But he maintains that, under Florida law, UM coverage must mirror liability coverage, and that the accident would be covered under Part A's liability coverage. *See, e.g.*, *Amica Mut. Ins. Co. v. Willis*, 235 So. 3d 1041, 1043 (Fla. 2d DCA 2018) ("UM coverage is intended to provide the reciprocal of liability coverage."). The district court reasoned that liability coverage did not apply because the tractor was not "[a] vehicle used in the business of farming or ranching."

Haskins raises two issues on appeal. The first is an issue of contract interpretation: whether the phrase "vehicle used in the business of farming" refers to the type of vehicle, rather than the activity for which the vehicle was used when the accident occurred. The second, his fallback argument, is an issue of evidence: whether

the evidence was sufficient for a jury to decide that the tractor was actually used in the business of farming.

## A.

As to the first issue, Haskins argues that we should interpret the exception for a "vehicle used in the business of farming" (the "farming business exception") consistent with what he asserts is the interpretation of the other listed exceptions. *See, e.g.*, *Cheetham v. S. Oak Ins. Co.*, 114 So. 3d 257, 263 (Fla. 3d DCA 2013) (construing an exception to an exclusionary provision consistently with other exceptions). But his premise is incorrect. The other exceptions do not all apply based on the type of vehicle. Notably, the second exception refers to the use of the vehicle in question, not just the type of vehicle. That is, the same type of vehicle—a "moving van"—would qualify "for personal use," but not for business use.

Nor is the first exception comparable to the farming-business exception, as Haskins contends. The first exception—"[a] four- or six-wheel land motor vehicle designed for use on public roads"—applies based on the use for which the vehicle was "designed." If that same language appeared in the farming business exception, there's no question it would cover a tractor, which is designed for use in farming. But the farming business exception is worded differently. It employs the term "used," instead of "designed for use." That difference suggests our focus should not be on the vehicle's design features or capabilities, or how it is customarily used, but rather how the vehicle was actually being "used" when the incident occurred. *See, e.g., Used*, MERRIAM-WEBSTER,

https://www.merriam-webster.com/dictionary/used (last visited Nov. 27, 2023) (defining "used" as "having been used before"). What's more, the exception ties that use to the "business" of farming, not just farming generally, which calls for a more contextual approach based on actual use.

For these reasons, we reject Haskins's contention that the type of vehicle alone governs the application of the farming-business exception.

### B.

As to the second issue, the evidence does not support a reasonable inference that Buchanan used the tractor in the "business" of farming or ranching.

The policy does not define the term "business," so "it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning." *Macedo*, 228 So. 3d at 1113. The ordinary dictionary meaning of "business" implies some kind of commercial activity undertaken for profit. *See, e.g.*, *Business*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/business (last visited Nov. 27, 2023) (defining "business" as "a usually commercial or mercantile activity engaged in as a means of livelihood"); *Business*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "business" as "[a] commercial enterprise carried on for profit").

In support of his claim that Buchanan was engaged in the "business of farming," Haskins relies primarily on the Florida appellate court's decision in *Saha*. In that case, the plaintiff, who

made his living as a doctor, invested in a "small herd of cattle, admittedly as a tax shelter," which the seller of the cattle originally cared for. 427 So. 2d at 317. A few years later, the plaintiff purchased a 22-acre tract of land and made improvements to the land to care for the cattle himself, including "completely fencing the property, excavating a 1½ acre deep pond, installing an irrigation pump in the lake[,] and constructing a cattle chute." He also added "some horses and sheep." *Id.*

After a young child drowned in his pond, the doctor sought a defense from his homeowner's insurance policy in the resulting civil suit. *Id.* at 317. His policy excluded coverage for bodily injury "[a]rising out of business pursuits of the insured." *Id.* The doctor argued "that because no profit was produced, and because he made his livelihood as a physician, not in raising cattle, he could not be said to be engaged in a business pursuit." *Id.* at 317–18. The appellate court rejected that argument, stating that the "absence of a profit does not negate the existence of a 'business pursuit.'" *Id.* at 318. The court noted that the plaintiff's federal tax returns "reflect[ed] virtually no income from the cattle but substantial expenses and depreciation, the difference serving as deductions on [his] income tax return." *Id.* And it concluded that the exclusion applied because the cattle operation, though unprofitable, still constituted "a continuous and comprehensive activity for financial gain," and was therefore a business pursuit. *Id.*

Haskins maintains that, like the doctor in *Saha*, he was engaged in the "business" of farming because he realized tax benefits

from the farming activities for which used the tractor. He also notes that, for Haskins to obtain the agricultural tax exemption under Florida law, the county property appraiser was required to find that his land was being used for "good faith commercial agricultural" purposes. *See* Fla. Stat. § 193.461(3)(a), (b).

Haskins's reliance on *Saha*, though similar in some respects, is ultimately unavailing. *Saha* does not stand for the broad proposition that any activity giving rise to a tax benefit constitutes a "business" activity. Rather, the evidence in *Saha* reflected that the doctor had made substantial investments in his land to care for the cattle he owned in the two years preceding the injury giving rise to the coverage dispute. *See* 427 So. 2d at 317. The doctor also appears to have derived some minimal income from his operation, even if it was "virtually no[ne]." *Id.* at 318. That evidence is consistent with pursuing a commercial enterprise.

No similar evidence was presented in this case, though. The evidence reflects that Buchanan kept around six cows to maintain a tax exemption for commercial agricultural use on part of his property. Although the property appraiser granted the exemption, there is no record evidence of the particular grounds for the exemption or of any kind of commercial farming activity connected with the use of the tractor around the time of the accident. Buchanan testified he did not grow or bale hay for any commercial purpose and "wouldn't have a tractor" "if [his] wife didn't have horses." And as Haskins notes, there is no evidence that Buchanan ever sold the cattle or horses or any offspring or farm products. Rather,

Buchanan is a dental technician who runs a dental lab adjacent to his home on the property. Accordingly, while a scintilla of evidence supports Haskins's position, we cannot say it was enough to show that the jury could reasonably find that the tractor was "used in the business of farming" within the ordinary meaning of that phrase. *See Baxter*, 54 F.4th at 1253; *Macedo*, 228 So. 3d at 1113.

For these reasons, we affirm the grant of summary judgment in favor of USAA. We decline to consider USAA's alternative ground for affirmance based on another exclusion to the liability coverage.

**AFFIRMED.**